760 P.2d 787

In the Matter of the Application of Howard M. SLEEPER and Hayden and Elaine Gaylor, No. 436–A into 3481; to Change Point of Diversion and Place and Purpose of Use of Surface Waters.

ENSENADA LAND & WATER ASSOCI-ATION, et al.,
Protestants–Appellants–Appellees,

v.

Howard M. SLEEPER and Hayden and Elaine Gaylor,
Applicants–Appellees–Appellants,

v.

Steve REYNOLDS, New Mexico State Engineer,
Respondent–Appellee–Appellant.

Nos. 8782, 8830.

Court of Appeals of New Mexico.

March 29, 1988.

Certiorari Quashed Aug. 2, 1988.

See also, 101 N.M. 579, 686 P.2d 269.

Martha A. Daly, Rothstein, Bailey, Bennett, Daly & Donatelli, Santa Fe, Richard Rosenstock, Chama, for protestants-appellants-appellees Ensenada Land and Water Ass'n.

Timothy V. Flynn–O'Brien, Bryan and Flynn–O'Brien, Albuquerque, for applicants-appellees-appellants Sleeper and Gaylor.

Fred Abramowitz, Martha C. Dabney, Sp. Asst. Attys. Gen., Santa Fe, for respondent-appellee-appellant S.E. Reynolds.

Beverly Singleman, Steven L. Hernandez, Martin, Cresswell, Hubert & Hernandez, P.A., Las Cruces, for amicus Elephant Butte Irrigation Dist.

Edward R. Pearson, Asst. City Atty., Albuquerque, for amicus City of Albuquerque.

Rebecca Dempsey, Stephenson, Carpenter, Crout & Olmsted, Santa Fe, for amicus Plains Elec. Generation & Transmission Co-op., Inc.

Clifford K. Atkinson, Walter E. Stern, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for amicus W.F. and Wanda Martin.

Richard A. Simms, Hinkle, Cox, Eaton, Coffield & Hensley, Santa Fe, for amicus Penasco Ski Corp.

## OPINION

REBECCA SITTERLY, District Judge.

On the court's own motion, the prior opinion of this court is withdrawn and the following opinion substituted therefor.

This appeal arises from a decision of the district court of Rio Arriba County reversing an order of the state engineer which had granted the Modified Application (the Application) of Sleeper and Gaylors (Applicants) to change the purpose and place of use and point of diversion of surface water rights appurtenant to the Ensenada Ditch near Ensenada, New Mexico. The Ensenada Land and Water Association, et al. (Protestants) appealed to the district court. After trial *de novo*, the district court reversed the state engineer's decision and denied the Application on the grounds that the requested transfer would impair existing water rights on the Rio Brazos stream system and would be contrary to the public interest. The Applicants and the state engineer appeal. We reverse the district court.

The issues are:

(1) Whether the state engineer's appeal is timely;

(2) Whether the applicable statutes allow consideration of the "public interest" in ruling on an application for change of purpose and place of use or point of diversion of surface water rights; and, if so,

    (a) Whether that grant of authority is an unconstitutional delegation of legislative function; and

    (b) Whether substantial evidence supports the trial court's determination that the requested changes would be contrary to the public interest; and

(3) Whether substantial evidence supports the trial court's finding that the transfer would impair existing rights, and

that the protective conditions imposed in the state engineer's order are insufficient to obviate the impairment.

Tierra Grande, Inc. and Penasco Ski Corporation began a recreational development and subdivision in Ensenada. A gravel pit was dug to supply gravel for construction of various roads in the subdivision. Primarily for recreational and aesthetic purposes, Tierra Grande decided to create a lake over the unsightly gravel pit. For this purpose, Tierra Grande contracted with Applicants to purchase lands and the appurtenant water rights, conditioned upon the state engineer's approval of an application for change of purpose and place of use and point of diversion of those water rights.

Applicants have water rights for irrigation purposes from the Ensenada Ditch. A sketch of the area, based on one of Applicants' exhibits, is reproduced below.

The Ensenada, Porvenir, and Park View Ditches divert from the Rio Brazos. The Nutritas Creek is a tributary of the Rio Brazos, is part of the Rio Brazos stream system, and empties into the Ensenada and Park View Ditches after they divert from the Rio Brazos. The Nutritas is fed by spring snow melt and occasional summer rain. It begins to run in March and is usually dry by May or early June. Water from the Nutritas, when it is flowing, is used by members of the Ensenada and Park View Ditches to water stock in the spring, to fill irrigation reservoirs for use in summer, and to "fertilize" the soil with its historically high silt content. The Nutritas produces between 800 and 4500 acre feet of water annually.

The declaration of water rights for the entire Ensenada Ditch, filed in the state engineer's office, shows an entitlement to irrigate 982.1 acres of land from the Rio Brazos with a duty of 1.3 acre feet of water per acre per year. The Application seeks to change point of diversion from Applicants' farms off the Ensenada Ditch to the proposed lake site on the Nutritas Creek, and to change the purpose of use from irrigation to construction and maintenance of a lake. This would be accomplished by a one-time diversion of 61.32 acre feet from the first year to fill the lake, and 13.32 acre feet annually thereafter to maintain the lake. Based on a consumptive use of 0.95 acre feet per acre per annum, Applicants proposed to temporarily retire 64.55 acres of irrigated land the first year and to permanently retire 14.02 acres of land from irrigation thereafter, which would offset the amount required for filling and maintenance of the lake.

## I. TIMELINESS OF STATE ENGINEER'S APPEAL.

■ We grant Protestant's motion to dismiss the state engineer's appeal as untimely. The judgment appealed from was entered on July 2, 1985. Applicants filed a notice of appeal on July 29, 1985, in Ct.App. No. 8782. The state engineer filed a notice of appeal on August 30, 1985, in Ct.App. No. 8830. No request for an extension of time to file the state engineer's notice of appeal was made. Although the state engineer's notice of appeal was filed within the time provided in NMSA 1978, Section 72–7–3 (Repl.1985), it was not filed within the time provided by the rules of appellate procedure. *See* NMSA 1978, Civ.App.R. 3 (Repl.Pamp.1984) and Civ.App.R. 4(c) (Supp.1985). The state engineer's appeal is untimely and this court is without jurisdiction to hear it. *American Auto. Ass'n v. State Corp. Comm'n*, 102 N.M. 527, 697 P.2d 946 (1985).

■ However, the state engineer was served with and is a named party in the notice of appeal filed by Applicants. Having jurisdiction of Applicants' appeal, and there being no prejudice to the parties, we grant the state engineer's motion to be added as a party appellant. *See generally* SCRA 1986, 12–301(A) (which provides for the addition of parties on motion of the appellate court on essentially the same terms as did NMSA 1978, Civ.App.R. 21(a) (Repl.Pamp.1984)); *see also Morris v. Fitzgerald*, 73 N.M. 56, 385 P.2d 574 (1963); *Home Fire & Marine Ins. Co. v. Pan American Petroleum Corp.*, 72 N.M. 163, 381 P.2d 675 (1963).

## II. THE PUBLIC INTEREST.

The district court concluded that, as a public official charged with supervising an important resource belonging to the public, the state engineer must consider the public interest in ruling on applications for transfer or change of water rights, whether or not articulated in the statutes, and that Applicants' requested transfer was contrary to the public interest and should be denied on that ground. In so concluding, the district court erred as a matter of law.

■ The jurisdiction of the state engineer to regulate use of water is "no broader than as expressed in or necessarily to be inferred from the statute." *State ex rel. Reynolds v. W.S. Ranch Co.*, 69 N.M. 169, 172, 364 P.2d 1036, 1038 (1961) (quoting *El Paso & R.I. Ry. Co. v. District Court*, 36 N.M. 94, 101, 8 P.2d 1064, 1068 (1931)). Thus, we must look to the statutes in force at the time of the Application to determine if public interest is a proper consideration in transfer applications.

Appropriation and use of surface water was governed, at the time of the Application, by NMSA 1978, Sections 72–5–1 *et seq.* Applicants contend that pursuant to the plain language of NMSA 1978, Sections 72–5–23 and –24, once there has been proper application to the state engineer, detriment to existing water rights is the only basis on which their application can lawfully be denied. Section 72–5–23 provided: "All water used in this state for irrigation purposes, * * * may be transferred for other purposes, without losing priority of right theretofore established, if such changes can be made without detriment to existing rights * * * ." and Section 72–5–24 provided:

An appropriator of water may, * *. * use the same for other than the purpose for which it was appropriated, or may change the place of diversion, storage or use, * * * provided that no such change shall be allowed to the detriment of the rights of others having valid and existing rights to the use of the waters of said stream system.

Protestants argue that language in other sections of Chapter 72, Article 5 of the statutes allows the state engineer to deny an application for transfer of surface water rights if the transfer would be detrimental to the public interest. They rely principally on NMSA 1978, Section 72–5–7, which provided: "If, in the opinion of the state engineer, there is no unappropriated water available, he shall reject such application * * *. He may also refuse to consider or approve any application or notice of intention to make application * * * if, in his

opinion, approval thereof would be contrary to public interest."

■ It is apparent that the first sentence refers to applications to acquire rights to unappropriated waters. Protestants argue that the second sentence quoted allows the state engineer to deny any application, including transfer of existing water rights, if it would be contrary to the public interest. Applicants contend that Section 72–5–7 applied only to applications to appropriate previously unappropriated surface water, and not to transfers of rights to waters already appropriated. We find Applicants' argument persuasive.

■ It is conceded that the state engineer has traditionally and consistently construed Section 72–5–7 to apply only to applications for unappropriated water, and that Sections 72–5–23 and –24 apply to transfers of existing rights, and allow him to deny a proper application for transfer only if it would be detrimental to other existing water rights. Long-standing administrative constructions of statutes by the agency charged with administering them are to be given persuasive weight, and should not be lightly overturned. *Molycorp., Inc. v. State Corp. Comm'n*, 95 N.M. 613, 624 P.2d 1010 (1981); *Perea v. Baca*, 94 N.M. 624, 614 P.2d 541 (1980). The logic of those rules is clear. First, the state engineer's orders are presumed to be proper implementations of the water laws. NMSA 1978, Section 72–2–8. Second, the more long-standing the state engineer's interpretation of construction of the statutes without amendment by the legislature, the more likely that the state engineer's interpretation reflects the legislature's intent.

■ Case law also supports the state engineer's interpretation of the statute. "Inherent in a water right is the right to change the place of diversion, *subject only* to the requirement that the rights of other water users not be injured or impaired thereby." *Langenegger v. Carlsbad Irrigation Dist.*, 82 N.M. 416, 421, 483 P.2d 297, 302 (1971) (emphasis added) (citing *Durand v. Reynolds*, 75 N.M. 497, 406 P.2d 817 (1965)); *Clodfelter v. Reynolds*, 68

N.M. 61, 358 P.2d 626 (1961); *Application of Brown*, 65 N.M. 74, 332 P.2d 475 (1958).

Although dealing with our groundwater rather than surface water statutes, two recent cases and the legislative reaction to them further support the Applicants' position. *City of El Paso v. Reynolds*, 563 F.Supp. 379 (D.N.M.1983) *(El Paso I)* held that New Mexico could not constitutionally embargo the export of water out-of-state. Our legislature immediately passed Laws 1983, Ch. 2, amending the groundwater statutes to allow new appropriations and transfers of groundwater for out-of-state use, if not contrary to the conservation of water or otherwise detrimental to the public welfare. *City of El Paso v. Reynolds*, 597 F.Supp. 694 (D.N.M.1984) *(El Paso II)* then ruled the amendments unconstitutional because the conservation and public welfare criteria were applicable to transfers out-of-state, but not to in-state transfers. "In-state, no permit to transfer a water right * * * can be denied on the ground that it would be contrary to the conservation of water or detrimental to the public welfare. These factors are irrelevant with regard to in-state transfers and domestic wells." *El Paso II*, 597 F.Supp. at 704. Although the El Paso cases dealt with the groundwater statutes, the transfer provisions are similar to those applicable to surface waters. The legislature again responded by enacting Laws 1985, Ch. 201, amending the water laws. But this time, both groundwater and surface water statutes were amended, adding for the first time the conservation and public welfare criteria to Sections 72–5–23 and –24, applicable to transfers of surface water rights. We will not distort the plain geography of a statutory scheme to find Protestants' construction. The statutes in force at the time of the Application did not allow denial of the requested transfer on the basis of general "public interest" considerations.

■ In view of our disposition, we need not reach the other public interest issues listed. As the state engineer acknowledged at oral argument, the public interest is relevant in considering certain aspects of an application to transfer existing surface

water rights, such as whether the transfer is to a beneficial use. However, in this case the trial court's decision incorporates a broader view of the public interest than in our judgment the legislature contemplated in enacting the controlling statute. Further, neither the record on appeal nor the oral arguments indicate that the issue of whether the proposed transfer was to a beneficial use was raised at trial.

## III. IMPAIRMENT OF EXISTING RIGHTS.

■ The district court found that the requested transfer would be detrimental to existing rights because:

[30.] a. Rio Brazos stream system water users would be deprived of water * * * (for) livestock in the early spring with water derived principally from the Nutritas Creek; and

b. Rio Brazos stream system water users would be deprived of their first watering in the spring which benefits the land in two ways:

i. the watering moistens the soil in preparation for sowing; and

ii. the watering "fertilizes" the soil by providing rich silt carried by the waters of the Nutritas Creek.

Applicants argue that, as a matter of law, water rights do not include a right to receive a traditional or historical amount of silt carried in the water. We agree.

Protestants argue that the reduction in silt content is a reduction in the quality of the water, citing *Heine v. Reynolds*, 69 N.M. 398, 367 P.2d 708 (1962) and *Stokes v. Morgan*, 101 N.M. 195, 680 P.2d 335 (1984). Both of those cases involved claims of diminished water quality from increased salt content in the water. Salt becomes chemically associated with water in a solution, while silt is physically associated with water in a suspension. Even salt has been held not to be part of the water in which it is dissolved, where the proposed appropriation sought water with a particular salt content so that the salt could be extracted for sale. *Deseret Livestock Co. v. State*, 110 Utah 239, 171 P.2d 401 (1946).

Apparently the only case directly on point is *A–B Cattle Co. v. United States*, 196 Colo. 539, 589 P.2d 57 (1978). The Colorado Supreme Court interpreted *Colo. Const.*, art. XVI, Section 5, to define water, "not silt and water," as subject to appropriation. 196 Colo. at 545, 589 P.2d at 61. That part of the Colorado constitution is remarkably similar to N.M. Const., art. XVI, Section 2. We agree with the Colorado Supreme Court. We hold that an owner of surface water rights does not have a right to receive a particular silt content that has existed historically. To hold otherwise could prevent all upstream users from controlling erosion on their lands for fear that silt would be reduced downstream.

■ Applicants met their burden of showing no impairment by introducing evidence supporting an inference that the Rio Brazos has historically produced a sufficient supply for irrigation needs on the Ensenada Ditch, except during the late summer months when the Nutritas is dry, by proving they will be retiring enough land from irrigation along the Ensenada Ditch to offset the water being used at the new location along the Nutritas, and by proof that the State Engineer had found no impairment. *See Stokes v. Morgan.* Thereafter, the burden of going forward with additional evidence shifted to Protestants.

■ Protestants' evidence of impairment included testimony that the users of the Rio Brazos stream system "need all the water they can get." This is not a sufficient showing. Protestants are entitled only to the amount of water allocated to them by declared right.

■ The remaining evidence does not support the trial court's findings as to the impact of the transfer on early spring watering. Applicants proposed to fill the lake by diversion of two days' flow in early March, and thereafter divert annually a much smaller amount of water to offset evaporation losses. In good years, when the flow of the Nutritas is high, the record indicates there would be no net effect on other users. In dry years, when the snow

**500**

melt is low, Applicants may not be able to receive their full entitlement from the Nutritas. However, because their point of diversion at the move-to location lies above the confluence of the Ensenada Ditch and the Nutritas, Applicants cannot make up the difference from the flow of the Rio Brazos. Therefore, if the transfer is granted, in all years the downstream users would have additional water available from the Rio Brazos that would otherwise have been subject to Applicants' claims at the move-from location. Finally, there was uncontroverted evidence that some amount of water from the Nutritas passes unused through the ditches and back to the Rio Brazos at various times in the spring.

In addition, the state engineer's order specified that no water shall be diverted from the Nutritas at any time that the combined flow of the Nutritas and the Rio Brazos are insufficient to meet the needs of the users along the Ensenada Ditch. Further, the order required that all water diverted for filling and maintaining the lake be measured in a manner acceptable to the state engineer.

Protestants have argued that the conditions imposed in the state engineer's order are inadequate to insure that their rights will not be impaired. The record indicates that a requirement for monthly metering was omitted by inadvertence. That omission shall be corrected on remand, including, if necessary, provision for monitoring to make metering effective. Once so corrected, the conditions imposed by the state engineer's order will adequately protect against any possible impairment of existing rights.

CONCLUSION.

The trial court's judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion. No costs are awarded.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.