874 P.2d 30

**TBCH, INC., a New Mexico corporation, d/b/a T.D.'s Showclub, Petitioner–Appellant,**

v.

**CITY OF ALBUQUERQUE, Respondent–Appellee.**

**No. 14522.**

Court of Appeals of New Mexico.

March 25, 1994.

John E. Farrow, Fairfield, Farrow, Hunt, Reecer & Strotz, P.C., Albuquerque, for petitioner-appellant.

David S. Campbell, City Atty., and Laura J. Mason, Asst. City Atty., Albuquerque, for respondent-appellee.

## OPINION

PICKARD, Judge.

TBCH, Inc. appeals from a district court order dismissing its appeal from a declaratory ruling adopted by the City of Albuquerque. The declaratory ruling purported to explain the meaning of "completely and opaquely covered" female breasts as that term is used in the City's Comprehensive City Zoning Code. Under the City's ruling, TBCH's property would not be in compliance with the Zoning Code and would consequently have to be relocated. TBCH raises the following issues on appeal: (1) that it is in compliance with the plain and unambiguous language of the Zoning Code, (2) that the City's interpretation of "completely and opaquely covered" is unconstitutionally vague, (3) that the City's interpretation of "completely and opaquely covered" is arbitrary and capricious, and (4) that the Zoning Code discriminates against women in violation of the New Mexico Equal Rights Amendment. We hold that TBCH complied with the Zoning Code as written, and we reverse the trial court's order of dismissal. Because this issue is dispositive of the appeal, we do not reach TBCH's other issues.

## BACKGROUND

The Zoning Code contains provisions that address the zoning of what are referred to as adult entertainment establishments. *See* Albuquerque, N.M., Rev.Ordinances ch. 7, art. XIV, §§ 5(B)(1); 5(B)(114); 22(B)(1); 40(D)(1)(a)(1)(b) (1993). Adult entertainment establishments are conditional uses under the Zoning Code, and as such they must meet certain locational requirements. *See id.* § 22(B)(1)(a) & (b). The Zoning Code has three definitions of an adult entertainment establishment, only one of which is argued by the parties as being relevant to this case. That particular definition defines an adult entertainment establishment as "[a]n establishment which provides amusement or entertainment which is distinguished or characterized by an emphasis on material depicting, describing, or relating to ... specified anatomical areas." *Id.* § 5(B)(1)(a). The Zoning Code defines "specified anatomical areas" as, among other things:

Less than completely and opaquely covered:

. . . .

(3) Female breast below a point immediately above the top of the areola to and including the bottom of the breast; covering of only the nipple and areola of the breast does not constitute such covering. . . .

*Id.* § 5(B)(114)(a).

TBCH's property is a nightclub that features female dancers. The practice of TBCH is to have its dancers apply heavy flesh-colored theatrical makeup to their breasts and areolae and to affix flesh-colored plastic circles to their nipples. In July 1991, the city zoning manager notified TBCH that it was classified as an adult entertainment establishment because its dancers' breasts were not "completely and opaquely covered." The zoning manager ordered TBCH to comply with the Zoning Code or to vacate its property and relocate to a zone that allows adult entertainment establishments.

In response to a request by TBCH as to whether its makeup practices satisfied the "clearly and opaquely covered" language of the Zoning Code, in September 1991 the zoning manager issued a declaratory ruling, stating that the wording of the ordinance "clearly eliminates the use of 'pasties' or nipple covers of any type. Only some sort of clothing which would cover the entire lower breast is acceptable." TBCH first appealed the zoning manager's ruling to the City's Environmental Planning Commission. *See* NMSA 1978, § 3–21–8 (Repl.1985). A hearing was held in October 1991, the Commission agreed with the zoning manager, and the declaratory ruling was adopted as official policy.

Next, TBCH appealed the Commission's decision to the City Council. In January 1992, the City Council denied the appeal, and found that "[t]he Council's legislative intent in adopting the language 'completely and opaquely covered' as applied to the female

breast is to conceal. Body makeup can be opaque but it does not 'completely cover' the breast if the appearance of the breast is apparent to the viewer."

TBCH then appealed the City Council's decision to the district court by writ of certiorari. *See* NMSA 1978, § 3–21–9 (Repl.1985). The district court found against TBCH, dismissed the appeal with prejudice, and quashed the writ. Finally, TBCH appeals the district court's order to this Court.

THE MEANING OF "COVERED" AS USED IN THE ALBUQUERQUE ZONING CODE

■ Both parties agree that TBCH will be in compliance with the Zoning Code and will not have to relocate its business if TBCH's makeup procedures constitute a complete and opaque covering of the dancers' breasts. At the October 1991 hearing before the Environmental Planning Commission, TBCH presented evidence, and the City did not dispute, that the makeup it used for its dancers was in fact opaque. Similarly, TBCH presented unrebutted evidence that the makeup was used on the complete area of the breast specified by the Zoning Code. The meaning of the word "covered," however, was disputed. While TBCH argued that female breasts may be "covered" by makeup, the declaratory ruling adopted by the City maintained that "[o]nly some sort of clothing which would cover the entire breast" would satisfy the Zoning Code. Further, the City Commission found that "[c]overing the female breast with body makeup does not serve to further the intent of the Zoning Code." Thus, this case turns on the meaning of "covered" as that term is used in the Zoning Code.

"Legislative intent is determined primarily by the language of the act and statutory construction is proper only in the case of ambiguity." *State ex rel. Mountain States Mut. Casualty Co. v. KNC, Inc.,* 106 N.M. 140, 141, 740 P.2d 690, 691 (1987); *see also State ex rel. Helman v. Gallegos,* 117 N.M. 346, 352, 871 P.2d 1352, 1358 (N.M.1994). Both parties contend that the language at issue is unambiguous. We agree. Webster's defines "cover" variously as "to put, lay, or

spread something over, on, or before," "to lie over: spread over: be placed on or often over whole surface of," and "to put a surface layer over usu[ally] completely." *Webster's Third New International Dictionary* 524 (Philip B. Gove ed., 1961). We believe that such definitions support TBCH's interpretation of the ordinance. Further, we are aware that "cover" is also defined as "to protect or conceal (one's body or a part of it) from view *typically* with an article of clothing or bedding." *Id.* (emphasis added). By its very use of the word "typically," however, this definition does not mean, as the City's declaratory ruling asserts, that only some sort of clothing can act as a cover. Nor is this a case, such as *Helman* in which a seemingly unambiguous statute is made ambiguous by another, contradictory statute. *See Helman,* 117 N.M. at 354, 871 P.2d at 1360. We hold, therefore, that the theatrical makeup, which was spread completely over the required surfaces of the dancers' breasts, and the plastic circles, which were placed on the dancers' nipples, satisfied the plain and unambiguous language of the ordinance.

The City argues that allowing makeup to "cover" a breast, even though such a practice could give the appearance of the actual breast, is absurd and contrary to the intent behind the ordinance. *See State v. Nance,* 77 N.M. 39, 46, 419 P.2d 242, 247 (1966) (court will not be bound by a literal interpretation of the words of a statute if such strict interpretation would defeat the intended object of the legislature or be absurd), *cert. denied,* 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967); *see also Helman,* 117 N.M. at 352–353, 871 P.2d at 1358–59. However, we do not believe that requiring a complete and opaque covering that might simulate the specified anatomical area is necessarily absurd or contrary to the legislative intent. In this connection, we note that the City has no quarrel with the use of skin-tight spandex tights as a form of "cover" for the dancers' buttocks, another specified anatomical area. Therefore, the City itself condones a method of "covering" which, like TBCH's method, could show the outline of the specified area and give the appearance of that area. All that the law requires is an opaque covering.

Heavy theatrical makeup is such a covering. While the viewing public may not readily distinguish between so covered areas and uncovered areas, the areas are distinguishable upon close inspection. We cannot say, as a matter of law, that it is absurd to insist on a distinction that is apparent only on close inspection but not apparent at a distance.

Further, if the City Council actually intended that a breast is not "covered" if "the appearance of the breast is apparent to the viewer," it could easily have made that intent more clear. *See, e.g.,* Louisville, Ky., Ordinances § 111.053(A), *reprinted in City of Louisville v. Commonwealth of Kentucky,* Nos. 92–CA–1529–S, 92–CA–1712–S, 92–CA–1761–S, 1993 WL 166937, at 3 (Ky.Ct.App. May 21, 1993) (not for publication) (under zoning ordinance, person shall not expose to public view a bare female breast "or employ any device or covering intended to give the appearance of or simulate" a female breast). Consequently, we do not believe that our interpretation is absurd or that it defeats the intent of the ordinance.

 As the language of the ordinance is unambiguous, and as our interpretation does not produce an absurd result, there is no need for us to construe the ordinance. *See KNC, Inc.,* 106 N.M. at 141, 740 P.2d at 691. However, even if we believed this ordinance to be ambiguous so as to require us to analyze the ordinance under the rules of statutory construction, *see Burroughs v. Board of County Comm'rs,* 88 N.M. 303, 306, 540 P.2d 233, 236 (1975) (if ordinance requires construction, the rules of statutory construction apply), our result would be the same. For example, one rule of statutory construction is to give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them. *See In re Sleeper,* 107 N.M. 494, 498, 760 P.2d 787, 791 (Ct.App.), *cert. quashed,* 107 N.M. 413, 759 P.2d 200 (1988). In adopting the zoning manager's declaratory ruling, the City Commission found that the ruling had "been in effect for more than six years." Our review of the record, however, indicates that the ruling to which the Commission referred was originally promulgated by the zoning manager in 1985, was subsequently superseded by a 1989 ruling that actually allowed the use of nipple covers, and was only re-implemented when TBCH asked for a declaratory ruling in 1991. Thus, the construction given the ordinance by the zoning manager was not long standing, and we do not afford it persuasive weight.

 Similarly, we do not give persuasive weight to the City Council's 1992 finding that the Council's legislative intent in adopting the ordinance excluded the use of opaque body makeup, as that finding was made more than two years after the ordinance was passed. *See State v. Cutnose,* 87 N.M. 300, 302, 532 P.2d 889, 901 (Ct.App.1975) (statutes are interpreted as the legislature understood them at the time they were enacted), *overruled on other grounds by State v. McCormack,* 100 N.M. 657, 660, 674 P.2d 1117, 1120 (1984). Moreover, legislative intent is to be determined from the language of the legislation itself, not from the statements of legislators after the passage of the legislation. *United States Brewers Ass'n, Inc. v. New Mexico Dep't of Alcoholic Beverage Control,* 100 N.M. 216, 218–19, 668 P.2d 1093, 1095–96 (1983), *appeal dismissed,* 465 U.S. 1093, 104 S.Ct. 1581, 80 L.Ed.2d 115 (1984).

Consequently, based on the undisputed facts in this case, and based upon our reading of the word "covered" as it is used in the Zoning Code, we hold as a matter of law that TBCH was in compliance with the Zoning Code. The order of trial court is reversed.

IT IS SO ORDERED.

ALARID, J., concurs.

HARTZ, J., files dissenting opinion.

HARTZ, Judge (dissenting).

I respectfully dissent.

On one point I disagree not only with the majority, but also with both parties. I do not believe that the language "completely and opaquely covered" is plain and unambiguous. For language to be plain and unambiguous, it must bear only one meaning no matter what the context. As I have recently learned, what may appear at first and second glances to be plain and unambiguous may turn out to have a different meaning when one carefully

examines the context. *See Coslett v. Third St. Grocery,* No. 14,912 (N.M.Ct.App. Mar. 21, 1994). Apparently the New Mexico Supreme Court has recently had a similar experience. *See State ex rel. Helman v. Gallegos,* 117 N.M. 346, 871 P.2d 1352 (N.M.1994).

In this case it does not require any great effort to detect ambiguity in the language of the ordinance. There are at least two common meanings of "cover" when applied to the human body. When one wants to "cover" a pimple or blemish, the usual practice is to apply makeup or the like. But that is hardly what a parent means in instructing a child to "cover up." Ordinarily, when one speaks of covering the human body to protect a person's modesty, "cover" means "cloak." A standard thesaurus lists "cloak" as a synonym for the verb "cover." *Roget's International Thesaurus,* entry 228.19, at 141 (4th ed. 1977).

One must therefore look to the context of the language of the ordinance. The apparent purpose of the "completely and opaquely covered" requirement is to reduce the erotic message. Cloaking the area will accomplish that purpose. Applying flesh-colored theatrical makeup will not. Hence, I agree with the City's construction of the language of the ordinance as requiring "some sort of clothing."

To be sure, as the majority points out, the ordinance could have been written more precisely to reflect the City's intent. Yet, it could also have been written more precisely to convey the construction adopted by the majority. The role of the courts is not to penalize legislative bodies by adopting perverse constructions of imprecise language; our task is to do our best to discern the meaning of the words used by the legislature. Although the majority opinion is not the first opinion to say "the legislature could have done better," I cannot recall an occasion on which that observation advanced the analysis in construing a civil statute, unless the court had adopted a clear-statement rule, *see generally Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 109, 111 S.Ct. 2166, 2170, 115 L.Ed.2d 96 (1991).

Supporting the City's construction of the ordinance is the general proposition that courts should defer to an administrative agency's authoritative interpretation of its own regulations. As stated in a leading treatise:

> The powerful effect courts give most agency interpretations of the agency's own regulations is based on common sense. The agency typically is in a superior position to determine what it intended when it issued a rule, how and when it intended the rule to apply, and the interpretation of the rule that makes the most sense given the agency's purposes in issuing the rule. Courts have significant institutional disadvantages in attempting to resolve these critical issues.

1 Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 6.10, at 282 (3d ed. 1994) [hereinafter Davis Treatise]. A formal, official decision by the body that enacted the law is readily distinguishable from a post-enactment affidavit by one member of that body. Thus, the above-quoted statement in the Davis Treatise has broad support despite the wide acceptance of the proposition that post-enactment affidavits should not be considered in determining legislative intent, *see United States Brewers Ass'n v. New Mexico Dep't of Alcoholic Beverage Control,* 100 N.M. 216, 218–19, 668 P.2d 1093, 1095–96 (1983), *appeal dismissed,* 465 U.S. 1093, 104 S.Ct. 1581, 80 L.Ed.2d 115 (1984). Indeed, one basis for the distinction between affidavits by individuals and official actions by the legislative body is noted in *United States Brewers Ass'n* itself, which said: "Testimony of individual legislators or others as to happenings in the Legislature is incompetent, since that body speaks solely through its concerted action as shown by its vote." *Id.* (emphasis deleted) (quoting *Haynes v. Caporal,* 571 P.2d 430, 434 (Okla. 1977)).

The proposition stated in the Davis Treatise should also apply when a city council interprets an ordinance it has adopted. In *Bienz v. City of Dayton,* 29 Or.App. 761, 566 P.2d 904, 918 (1977), the court wrote:

> In administrative law we have generally held that it is the responsibility of the agency entrusted with the administration of a statute, rather than the courts, to fill

the statutory interstices.... The same rule should apply in construing municipal ordinances. The city council is not only charged with administering the ordinance, but is the legislative authority from which the ordinance originates and thus is in a superior position to discern legislative intent. Here, we have an ambiguity in the ordinance. We defer to the city's resolution of that ambiguity where as here the city's construction is not contrary to the express terms of the ordinance.

Accord *Clark v. Jackson County,* 313 Or. 508, 836 P.2d 710 (1992); *see Hyde v. Taos Mun.– County Zoning Auth.,* 113 N.M. 29, 30, 822 P.2d 126, 127 (Ct.App.), *cert. denied,* 113 N.M. 16, 820 P.2d 1330 (1991). Agreeing with this view, I would defer to the City Council's interpretation of the ordinance at issue here. Deference is particularly appropriate in this case. The City Council was interpreting an ordinance it had enacted only two-and-one-half years earlier and was reaffirming a construction of the word "covered" that had been consistently applied by the zoning manager in construing the ordinance's predecessor.