884 P.2d 523

**INFINITY GROUP, INC.; New Mexico Amateur Hockey Association; Scholastic, Inc.; New Era Education, Inc.; Eugene P. Long, Disabled American Veterans Chapter 32; Kiddie Kollege of Albuquerque, Inc.; The Albuquerque Sertoma Club, Inc.; Disabled American Veterans, Department of New Mexico; Sandia Mountain Lions Club; American Legion Post 122; Family Enrichment Center; Rio Grande Wrestling Club, Inc.; Albuquerque Speech & Hearing; Democratic Party of Bernalillo County; Telephone Pioneers of America; and Quantum Corporation, Plaintiffs–Appellants,**

v.

**Jerry MANZAGOL, Superintendent, Regulation and Licensing Department of the State of New Mexico, Defendant–Appellee.**

No. 14929.

Court of Appeals of New Mexico.

Sept. 13, 1994.

Certiorari Denied Oct. 18, 1994.

John T. Porter, John T. Porter, P.A., Albuquerque, for plaintiffs-appellants.

Tom Udall, Atty. Gen., Joel Cruz–Esparza, Asst. Atty. Gen., Santa Fe, for defendant-appellee.

## *OPINION*

PICKARD, Judge.

This case presents the sole issue of whether machines that electronically simulate the game of pull tabs are allowed by the Bingo and Raffle Act, NMSA 1978, §§ 60–2B–1 to –14 (Repl.Pamp.1991). We hold that the Act allows for the operation of such machines by those organizations covered by the Act.

### *BACKGROUND*

The purpose of the Act, which was passed in 1981, "is to make lawful and regulate the conducting of certain games of chance by certain nonprofit organizations." Section 60–2B–2. A "game of chance" is defined by the Act as

> that specific kind of game of chance commonly known as bingo or lotto in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random and that specific kind of game of chance commonly known as raffles which is conducted by drawing for prizes or the allotment of prizes by chance or by the selling of shares, tickets or rights to participate in the game[.]

Section 60–2B–3(M).

The State Regulation and Licensing Department is charged with the administration and regulation of the gaming activities allowed by the Act. Section 60–2B–4(A)(2).

The Department has issued regulations pertaining to the operation of "jar raffles" and "pull tabs" by those organizations covered by the Act. As it is currently played in New Mexico, the game of pull tabs involves a player randomly drawing a paper card from a finite number of winning and losing cards and physically pulling away tabs affixed to the card, thereby revealing a combination of numbers or symbols with which the player may win certain cash prizes. The Department's regulations define "jar raffles or pull tabs" as "printed tickets that have a pull tab or seal to be opened by the purchaser where a winning combination is printed on each ticket or on a separate card[.]" Definition of Bingo & Raffle Terms, N.M. Regulation & Licensing Dep't Reg. 2B–3(J) (March 21, 1984).

Plaintiff Infinity Group is a distributor of electronic gaming devices, Plaintiff Quantum Corporation is the landlord of buildings in which bingo and pull-tab games are conducted for non-profit organizations, and all other Plaintiffs are non-profit organizations licensed under the Act. Plaintiffs collectively wish to distribute, install, and operate three machines—the "Oasis," the "VLC," and the "Wildfire"—which electronically simulate the game of pull tabs. As with traditional paper pull tabs, Plaintiffs' machines randomly draw from a finite number of winning and losing chances, and gradually reveal the numbers or symbols which inform players whether they have won or lost. Unlike the traditional game, however, the "tabs" involved are not actual paper tabs but are instead simulations of paper tabs on a video screen. Consequently, Plaintiffs' machines do not allow for players physically to pull tabs off of a paper card but, again, simulate this action on the video screen instead. Plaintiffs' machines, therefore, do not conform to the Department's regulation defining permissible pull tabs as printed tickets to be opened by the purchaser.

The Department refused to allow Plaintiffs to install and operate the machines. Plaintiffs filed a complaint asking for a judgment declaring that their electronic pull-tab games are permissible under the Act. In response, the Department relied upon its regulations defining permissible pull tabs. Following a bench trial, the district court found that, although the machines are a computerized form of the pull-tab game as it is currently played in New Mexico, and although the machines offer greater protection from abuse than paper pull tabs, the additional resources required to regulate the machines and the "glamorous and enticing" qualities of the machines were factors that the Department could have properly considered in disallowing these machines. The district court also found that the machines did not exist at the time the Act was passed. The district court then concluded that electronic pull-tab games are not authorized by the Act and are against public policy, and it denied Plaintiffs' complaint. Plaintiffs appeal, and we reverse.

## DISCUSSION

Initially, the Department argues that this case turns on whether the regulations it promulgated under the Act were intended to regulate electronic pull-tab games. This argument, however, misapprehends the issue. The question in this case is what games the legislature, not the Department, intended the Department to regulate. See *Chalamidas v. Environmental Improvement Div.*, 102 N.M. 63, 66, 691 P.2d 64, 67 (Ct.App.1984) (agency cannot amend or enlarge its authority or modify the statutory provision creating it through rules and regulations).

The Department next argues that, notwithstanding its regulations allowing paper pull-tab games, the language of the Act does not in fact allow for any type of pull-tab game. It is true that the definition of "game of chance" does not expressly include the game of pull tabs. However, we have previously construed the Act's definition of "raffles," which is a "game of chance," as an allotment of prizes by chance accomplished through a drawing. See *State ex rel. Rodriguez v. American Legion Post No. 99*, 106 N.M. 784, 787, 750 P.2d 1110, 1113 (Ct.App.), *cert. denied*, 106 N.M. 588, 746 P.2d 1120 (1987), *and cert. denied*, 107 N.M. 16, 751 P.2d 700 (1988). The trial court's findings demonstrate that, as it is currently played in New Mexico, the game of pull tabs involves exactly these elements: 1) a finite number of prize cards; and 2) the distribution of those

prize cards through a chance drawing by a player. Further, we note that elsewhere the Act specifically provides that "[t]he aggregate amount of all prizes offered or given in all games played on a single occasion shall not exceed one thousand five hundred dollars ($1,500) *which shall be exclusive of pull tabs.*" Section 60–2B–8(J) (emphasis added). In sum, the fact that pull-tab games as played in New Mexico fit the Act's definition of "raffles," combined with the fact that "pull tabs" are specifically mentioned elsewhere in the Act, leads us to believe that at least the paper pull-tab games that are presently played were contemplated by the legislature as a form of the game of chance of raffles allowed under the Act.

■ This brings us to the real question in this case, namely, whether *electronic simulations* of pull-tab games are allowed by the Act. There is nothing in the Act expressly prohibiting electronic versions of the game. Indeed, the Act refers to "equipment" to be used with respect to raffles, and defines such equipment as "implements, devices *and machines* designed, intended or used for the conduct of raffles and the identification of the winning number or unit and the ticket or other evidence or right to participate in raffles[.]" Section 60–2B–3(L) (emphasis added). It is therefore apparent that mechanical devices are generally allowed under the Act.

We do note that the Act allows for that game of chance "commonly known as" raffles, and it is true that electronic pull-tab simulation machines did not exist at the time the Act was passed in 1981. Thus, a possible argument favoring the Department's construction is that electronic pull-tab games could not have been games "commonly known" at the time of enactment. We do not believe, however, that because only the paper form of the game was in existence in 1981, only the paper form is permissible under the Act. *See generally State ex rel. Udall v. Public Employees Retirement Bd.*, 118 N.M. 507, 511–12, 882 P.2d 548, 552–57 (Ct.App. 1994) [ (1994) ] To begin with, we do not believe that the phrase "commonly known as" adds anything, including an element of ambiguity, to the Act, as that phrase appears to be boilerplate language regularly attached to statutes regulating games of chance. *See, e.g.,* 25 U.S.C.A. § 2703(7)(A)(i) (Supp.Pamp. 1994); Colo.Rev.Stat. § 12–9–102(7) (1991); La.Rev.Stat.Ann. § 33:4861.4(A)(1) (West 1988); Mich.Comp.Laws Ann. § 432.102(1) (West Cum.Ann.Pocket Part 1994); N.J.Stat. Ann. § 5:8–25 (West 1988); N.Y.Gen.Mun. Law § 476(3) (Consol.1982); R.I.Gen.Laws § 11–19–30(e) (Cum.Supp.1993); S.C.Code Ann. § 12–21–3320(1) (Law.Co-op.Cum.Supp. 1993); Tex.Rev.Civ.Stat.Ann. art. 179d, § 2(2) (West Supp.Pamp.1994); Wis.Stat. Ann. § 565.01(6m)(b)(9) (West Spec.Pamp. 1993). We are supported in our determination not to give persuasive weight to the phrase "commonly known as," inasmuch as the federal act, for example, groups "pull-tabs, lotto, punch boards, [and] tips jars" with games "commonly known as bingo." 25 U.S.C.A. § 2703(7)(A)(i)(III).

■ Further, we do not believe that paper cards or any skill that might be associated with paper cards were so important an element of the game in 1981 as to make Plaintiffs' machines violative of the Act. To be sure, actual cards handled by players, and skills associated therewith, may be an essential aspect of other games traditionally played with cards. A key element of the game of poker, for instance, is to hide one's cards from other players, and at least one court has stated that electronic simulations of poker are not in fact "poker" as that game is historically understood. *See Gallatin County v. D & R Music & Vending, Inc.*, 208 Mont. 138, 676 P.2d 779, 781 (1984) ("[Poker] is a game played with playing cards, not with electronic images displayed on a screen."), *superseded by statute as stated in MPH Co. v. Imagineering, Inc.*, 243 Mont. 342, 792 P.2d 1081, 1085 (1990). These elements of secrecy and skill, however, are lacking in pull tabs, and we do not believe that physically handling cards is a fundamental characteristic of the game. Consequently, Plaintiffs' electronic games, which replicate all of the essential elements of pull tabs, are pull tabs as that game was commonly known in 1981, and as such are allowed under the Act. *Cf. Cabazon Band of Mission Indians v. National Indian Gaming Comm'n*, 14 F.3d 633,

636 (D.C.Cir.) (under federal statute, electronic pull-tab machine was classified as an electronic facsimile of a game of chance because it "exactly replicates the paper version of the game"), *cert. denied,* —— U.S. ——, 114 S.Ct. 2709, 129 L.Ed.2d 836 (1994).

■ In addition, we do not believe that the fact that the machines were found by the trial court to be "glamorous and enticing" means that they are prohibited by the Act. We interpret the Act to allow for that form of gambling commonly known as pull tabs, and a glamorous and enticing version of the game does not change its essential character. Finally, because we believe the Act unambiguously allows for the operation of Plaintiffs' electronic pull-tab games, we do not defer to the Department's regulations concerning the games. *See New Mexico Pharmaceutical Ass'n v. State,* 106 N.M. 73, 75, 738 P.2d 1318, 1320 (1987) (persuasive weight will be given to an administrative agency's interpretation of an ambiguous statute, but a reviewing court will overturn an agency's incorrect interpretation).

In sum, we hold that the language of the Act as written allows for the operation of Plaintiffs' electronically simulated pull-tab games. If the legislature intended otherwise it can easily make that intent clear. *See, e.g.,* 25 U.S.C.A. §§ 2703(7)(A)(i) (specifically addressing electronic and computerized bingo); 2703(7)(B)(ii) (prohibiting certain "electronic or electromechanical facsimiles"); La.Rev. Stat.Ann. § 33:4861.17(F) (West Cum.Ann.Pocket Part 1994) (addressing electronic and computerized bingo); Me.Rev. Stat.Ann. tit. 17, § 330(1–A) (West Cum.Pocket Part 1993) (specifically addressing electronic video machines); *see also TBCH, Inc. v. City of Albuquerque,* 117 N.M. 569, 572, 874 P.2d 30, 33 (Ct.App.1994). Further, if the Department believes that the games should only be allowed in their paper form, it should take that argument to the legislature rather than to this Court. *See American Legion,* 106 N.M. at 788, 750 P.2d at 1114 (Act may be changed through legislative therapy, not judicial surgery).

*CONCLUSION*

The judgment of the trial court is reversed.

IT IS SO ORDERED.

MINZNER, C.J., and APODACA, J., concur.