2004-NMCA-090

94 P.3d 817

**Lee LANTZ and Gloria Lantz, Plaintiffs–Respondents/Appellees,**

v.

**SANTA FE EXTRATERRITORIAL ZONING AUTHORITY, Defendant–Petitioner/Appellant,**

**and**

**Sheltered Living, Inc., Real Party in Interest–Petitioner/Appellant.**

**No. 23,138, 23,143.**

Court of Appeals of New Mexico.

May 13, 2004.

W. Anthony Sawtell, Bryan P. Biedscheid, Sawtell, Wirth & Biedscheid, P.C., Santa Fe, for Appellees.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for Appellant Sheltered Living, Inc.

OPINION

FRY, J.

{1} The parties dispute the application of a zoning ordinance that places limits on non-conforming uses of land within a residential zone. Defendant Sheltered Living, Inc. (SLI) obtained administrative approval for a new modular building to be used as office space for its residential care facility, a commercial enterprise that is permitted as a non-conforming use because it predates the existence of the zoning restrictions. Plaintiffs Lee and Gloria Lantz (the Lantzes), neighbors of the facility, sought to reverse this approval on several grounds, including the theory that the new structure constituted an impermissible expansion of the non-conforming use. After two failed administrative appeals, the Lantzes appealed to the district court. The district court agreed with the Lantzes and reversed the final agency decision on the basis that the applicable zoning ordinance effectively prohibits treating a new building as an extension of a non-conforming use. We granted certiorari to consider the meaning of the disputed ordinance. We hold that the ordinance is ambiguous. We further hold that the agency decision was a reasonable interpretation of its own ordinance. *See Atlixco Coalition v. Maggiore,* 1998–NMCA–134, ¶ 33, 125 N.M. 786, 965 P.2d 370. Consequently, we accord deference to the agency decision and reverse the district court.

## BACKGROUND

{2} SLI operates a residential care facility known as the Life Healing Center (the facility). The facility is located within the boundaries of the Santa Fe County Extraterritorial Zoning District, and therefore falls under the jurisdiction of the Santa Fe County Extraterritorial Authority (EZA). In 1981, the EZA enacted the Santa Fe County Extraterritorial Zoning Ordinance (the ordinance), the interpretation of which is at the heart of this dispute.

{3} Current provisions of the ordinance restrict the area to residential use and would not permit the facility; however, because the facility lawfully existed prior to the ordinance, the facility has been grandfathered in as a legal non-conforming use. SLI submit-

ted an application to the Santa Fe County Land Use Administrator requesting permission to add a new modular building to serve as office space for the facility. In SLI's view, the new building was permissible under a section of the ordinance that allows the extension of legal non-conforming uses within certain limits. The administrator granted the initial approval. The Lantzes first appealed to the Extraterritorial Zoning Commission, which confirmed the administrator's decision. The Lantzes then appealed to the EZA, which likewise found that the controlling zoning ordinance permitted the new modular building as an extension of a legal non-conforming use. Having exhausted their administrative avenues for appeal, the Lantzes sought relief in the district court under NMSA 1978, § 39–3–1.1 (1999) and Rule 1–074 NMRA 2004.

{4} Although the Lantzes raised four issues in the district court, the court's decision rested on its interpretation of the disputed section of the ordinance that governs the extension of non-conforming use. The district court found that the EZA erroneously interpreted the ordinance as permitting a new building as an extension of a non-conforming use. Accordingly, the district court canceled SLI's development permit. The EZA and SLI both petitioned this Court for a writ of certiorari. This Court granted the petitions and consolidated them into a single case on appeal.

## DISCUSSION

{5} In reviewing the decision of an administrative agency, this Court applies the same statutorily defined standard of review as the district court. *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n,* 2003–NMSC–005, ¶ 17, 133 N.M. 97, 61 P.3d 806. Accordingly, we will not disturb a final agency decision unless it was fraudulent, arbitrary, or capricious; not supported by substantial evidence; or otherwise not in accordance with law. § 39–3–1.1(D); *see also* NMSA 1978, § 3–21–4(C) (1999) (providing that appeals from decisions of an extraterritorial zoning authority are taken to the district court as provided in Section 39–3–1.1). In this case, the parties' arguments are limit-

ed to the legal question of whether the agency correctly interpreted the ordinance.

{6} The disputed provision of the Santa Fe Extraterritorial Zoning Ordinance § 8.1(B)(2) (1997) (hereinafter EZO) provides as follows:

2. A non-conforming use of land, use of structure, or non-conforming structure may be enlarged, extended, or altered provided the following conditions, as applicable, are met:

. . .

c. A non-conforming use of land may be extended or expanded by up to one half of the original land area occupied at the effective date of adoption or amendment of this Ordinance and a structure containing a non-conforming use may be enlarged or expanded by up to one half of the original floor area existing at the effective date of adoption or amendment of this Ordinance, provided, however, the intensity of the proposed extension or expansion does not increase the intensity of the non-conforming use. . . .

Also relevant is the EZO definition of non-conforming use:

Non-conforming Use—means an activity using land, buildings, signs, and/or structures for purposes which at the time it was established fully complied with all applicable laws and Ordinances but which would not be permitted to be established as a new use in a zone in which it is located by the regulations of this Ordinance or any subsequent amendment to it.

Id. § 2.

{7} Judicial interpretation of an ordinance invokes the same rules of construction as interpretation of a statute. TBCH, Inc. v. City of Albuquerque, 117 N.M. 569, 572, 874 P.2d 30, 33 (Ct.App.1994). In this case, the relevant rules are those that our Supreme Court applied in High Ridge Hinkle Joint Venture v. City of Albuquerque, 1998–NMSC–050, 126 N.M. 413, 970 P.2d 599. First, in the absence of some contrary indication from the enacting body, courts must look to the plain language of an ordinance and give the words their ordinary meaning. Id. ¶ 5. Where language is clear and makes sense as written, there is usually no need to employ judicial rules of construc-

tion. TBCH, Inc., 117 N.M. at 572, 874 P.2d at 33; see also Key v. Chrysler Motors Co., 121 N.M. 764, 769, 918 P.2d 350, 355 (1996) ("[C]ourts must exercise caution in applying the plain meaning rule." (internal quotation marks and citation omitted)). Where an ordinance is ambiguous, however, courts must look beyond the plain language. TBCH, Inc., 117 N.M. at 572, 874 P.2d at 33. Because this is an administrative appeal, the second applicable rule is that we "give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them." High Ridge Hinkle, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted); see also W. Bluff Neighborhood Ass'n v. City of Albuquerque, 2002–NMCA–075, ¶ 41, 132 N.M. 433, 50 P.3d 182 ("In the face of ambiguity in a code, we ordinarily defer to how the city council, as its author, interprets that code."), overruled on other grounds by Rio Grande Chapter of Sierra Club, 2003–NMSC–005, ¶ 16 n. 10, 133 N.M. 97, 61 P.3d 806; see also Alba v. Peoples Energy Resources Corp., 2004–NMCA–084, 136 N.M. 79, 94 P.3d 822 [No. 23,963, 2004 WL 1698980 (N.M.Ct.App. May 13, 2004)] (reviewing New Mexico case law giving deference to agency interpretation even if it is not of longstanding duration.) Third, to the extent that multiple sections of the ordinance come into play, we consider the relevant sections together "so that all parts are given effect." High Ridge Hinkle, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599.

{8} As to whether the ordinance is ambiguous, both parties argue that the ordinance is not ambiguous and that it clearly supports their respective positions. According to SLI, a structure constitutes a "use of land." Consequently, SLI contends, the language in the first clause of Section 8.1(B)(2)(c) of the EZO permits new structures that occupy up to one half of the original land area. The Lantzes' interpretation, in contrast, is that the first clause does not apply to structures at all, and that the second clause provides the limits for the enlargement or expansion of existing structures. In other words, the Lantzes interpret the ordinance as unambiguously and completely prohibiting new structures. With respect to the

existence of ambiguity in the ordinance, we disagree with the parties; the meaning is not as clear as they suggest.

{9} Instead, considering the plain language of the ordinance, we are left with "genuine uncertainty" as to whether a new structure might be allowed as an extension of a non-conforming use. *See State v. Rivera,* 2004–NMSC–001, ¶ 11, 134 N.M. 768, 82 P.3d 939 (internal quotation marks and citation omitted). Section 8.1(B)(2)(c) of the EZO contains no express language either prohibiting or permitting new structures. *See Rivera,* 2004–NMSC–001, ¶ 16, 134 N.M. 768, 82 P.3d 939 (finding significance in the omission of express language addressing whether a probationer's sentence runs during the pendency of an appeal). Turning to the definitions section of the ordinance, "Non–Conforming Use" is described as "an activity using land, buildings, signs, and/or structures," EZO § 2, which leaves open the possibility that use of a new structure could be a kind of non-conforming use. We recognize that the distinction between a non-conforming use and a non-conforming structure could be crucial. *See* 1 Robert M. Anderson, *American Law of Zoning* § 6.01 (3d ed. Supp.1994) (hereinafter Anderson). However, this particular ordinance does not clearly draw that distinction. It does not, for example, define non-conforming structure separately from non-conforming use. *See id.* (treating non-conforming use and structures as one, except where they are distinguished by statute, ordinance, or the courts); *cf. Odell v. City of Eagan,* 348 N.W.2d 792, 797 (Minn.Ct.App.1984) (applying an ordinance that distinguishes between non-conforming structures and non-conforming uses and finding that a garage is a non-conforming structure).

{10} We further recognize that we must read the ordinance as a whole, *High Ridge Hinkle,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599; however, we reject the Lantzes' contention that Section 8.4 of the EZO resolves the meaning of Section 8.1(B)(2)(c). Section 8.4 simply sets out that the ordinance prohibits non-conforming uses that are "not allowed specifically," a proposition that does not clarify whether a new structure could be a permitted type of non-conforming use. Given this inherent ambiguity, we must apply the relevant rules for construing zoning ordinances.

{11} As SLI asserts in its alternative argument, where an ordinance is ambiguous, case law requires some measure of deference to a reasonable interpretation of the authoring agency, in this case, the EZA. *See N.M. State Bd. of Psychologist Exam'rs v. Land,* 2003–NMCA–034, ¶ 5, 133 N.M. 362, 62 P.3d 1244; *W. Bluff Neighborhood Ass'n,* 2002–NMCA–075, ¶ 41, 132 N.M. 433, 50 P.3d 182; *cf. TBCH, Inc.,* 117 N.M. at 571–72, 874 P.2d at 32–33 (declining to defer to a city council interpretation of a zoning ordinance where the language of the ordinance was unambiguously contrary to the city council's ruling). This rule of deference arises in part from the notion that certain kinds of questions implicate agency expertise. *Land,* 2003–NMCA–034, ¶ 5, 133 N.M. 362, 62 P.3d 1244. In addition, where an agency authored an ordinance, that agency is particularly well situated to determine the intent behind its own language. *See Atlixco Coalition,* 1998–NMCA–134, ¶ 33, 125 N.M. 786, 965 P.2d 370 (deferring to an agency's reasonable interpretation of its own regulations); *see also San Pedro Mining Corp. v. Bd. of County Comm'rs,* 1996–NMCA–002, ¶ 18, 121 N.M. 194, 909 P.2d 754 (deferring to a county's reasonable interpretation of the land use code that it adopted where the county's intent was not clear). We agree with SLI that this rule of deference does not require that an agency interpretation be longstanding, because the requirement for longstanding interpretation applies to an agency's interpretation of a statute, as opposed to an agency-authored ordinance or regulation. *See State ex rel. Stratton v. Roswell Indep. Schs.,* 111 N.M. 495, 502–03, 806 P.2d 1085, 1092–93 (Ct.App.1991) (giving deference to an administrative agency's interpretation of a statute enacted by the legislature where the legislature does not act to modify or correct the agency interpretation). Here, our deference is founded on the special expertise of the EZA, which has both the experience and the authority to assign meaning to ambiguous language in the ordinance that it authored.

{12} Having determined that we will give deference to the EZA's reasonable interpretation of its own ordinance, we first note the undisputed testimony that the EZA

had previously approved expansions of nonconforming uses by allowing the building of new structures. Although the Lantzes contend that no documents were tendered in support of the testimony, we are unaware of any authority that would require corroboration in this situation.

{13} In its findings, the EZA referred to the new SLI structure as an "expansion of the non-conforming use." The findings indicate that the EZA was operating under both clauses of EZO § 8.1(B)(2)(c). Many of the findings were concerned with the additional area of the enclosed buildings alone as well as with the additional area of the enclosed buildings together with covered portals, which were not considered structures. The EZA made findings about (1) the original square footage of both categories and (2) the added square footage of both categories. Thus, in the EZA's view, the addition of a new structure was permissible in accordance with the ordinance's language stating both that "a non-conforming use of land may be extended or expanded" and that "a structure containing a non-conforming use may be enlarged or expanded," EZO § 8.1(B)(2)(c), providing the ordinance's other requirements are met. In other words, the ordinance does not prohibit the addition of new structures and in fact contemplates that the enlargement, extension, or expansion of use can include the addition of a structure. This is a reasonable interpretation of the ordinance. *See generally Anderson, supra* § 6.47 (listing cases holding that addition of new structures does not constitute the prohibited extension of non-conforming use).

{14} We believe that it is reasonable to construe the ordinance as permitting the addition of new structures, providing the ordinance's area restrictions are satisfied, and providing "the intensity of the proposed extension or expansion does not increase the intensity of the non-conforming use." EZO § 8.1(B)(2)(c). Both the area restrictions and the intensity restriction serve to ensure that any new structures will be unlikely to expand non-conforming use to unacceptable levels. The EZA was concerned with whether the new structure fell within the ordinance's "one-half" limitations. EZO § 8.1(B)(2)(c). The EZA found that it did, and there is substantial evidence supporting this determination. The EZA also determined that the addition of the structure would not change the character or intensity of the use of the property. Much of the controversy in this appeal surrounds the question of whether one or the other of the one-half limitations contained in EZO § 8.1(B)(2)(c) controls. We need not finally decide the question in this case. It appears that the EZA sought to insure that neither was violated. The only question before us is whether the pertinent language prohibits the addition of new structures. For the foregoing reasons, we hold that it does not. Therefore, we hold that the EZA's interpretation of its ordinance was correct and the district court erred in construing the ordinance contrary to the EZA's interpretation.

## CONCLUSION

{15} For the foregoing reasons, we reverse. We remand to the district court with instructions to consider the remaining arguments the Lantzes made in their appeal to the district court that it did not rely on in its order reversing the EZA's decision.

{16} **IT IS SO ORDERED.**

PICKARD and SUTIN, JJ., concur.