2008-NMCA-011

175 P.3d 949

**CITY OF RIO RANCHO, Plaintiff–Appellant,**

v.

**Gordon LOGAN, Defendant–Appellee.**

**No. 26,829.**

Court of Appeals of New Mexico.

Nov. 9, 2007.

James C. Babin, City Attorney, Margot J. Steadman, Deputy City Attorney, Kenneth J. Tager, Assistant City Attorney, Rio Rancho, NM, for Appellant.

Huffaker & Moffett LLC, Gregory D. Huffaker, Jr., Michael J. Moffett, Santa Fe, NM, for Appellee.

## OPINION

CASTILLO, Judge.

{1} Plaintiff appeals the district court's dismissal of the complaint against Defendant, the owner of two telecommunications towers that Plaintiff alleges are public nuisances. In response to Plaintiff's motion for summary judgment, Defendant argued that the towers had been grandfathered in as legally permitted non-conforming uses under a 2004 city ordinance. The district court agreed with Defendant's interpretation of the ordinance and, as there were no material issues of fact in dispute, dismissed Plaintiff's complaint. We reverse the district court.

## I. BACKGROUND

{2} Defendant lives in a part of Rio Rancho zoned R–1, single-family residential. In 1996, he built a tower with an antenna, which Plaintiff alleges is more than 55 feet tall. In 1998, Defendant built a second tower with an antenna, which Plaintiff alleges is approximately 122 feet tall. Defendant did not obtain a building permit for either tower. At the time the towers were built and at all relevant times since, the Rio Rancho Zoning Code limited the height of structures to 32 feet, with an additional 10 feet allowed for antennas, for a maximum of 42 feet. The Zoning Code also established usage limita-

tions and setback requirements from property lines.

{3} In 2004, Rio Rancho adopted a new ordinance, Chapter 158 ("the 2004 ordinance" or "Chapter 158"), titled Regulating the Siting of Wireless Telecommunications Facilities. Rio Rancho, N.M., Ordinance 16, Title XV ch. 158, Enactment 04–041 (October 27, 2004). Previously, no ordinance specifically addressed telecommunications towers, although certain aspects regarding towers—such as height, screening, setbacks, and commercial use—were governed by other ordinances pertaining to structures in general. Chapter 158 establishes a permit process for wireless telecommunications facilities in Rio Rancho, such as cell phone towers and radio antennas. Chapter 158 also sets forth a detailed permit application and public hearing process, as well as specifying standards for such issues as location, height, shared use, lighting, security, signage, and liability insurance.

{4} In 2005, Plaintiff filed the present action: Complaint for Abatement of Zoning Violations and Public Nuisance, and Request for Injunction. The complaint alleges that Defendant's towers violate the Rio Rancho zoning ordinances governing height, setback, building permits, and commercial use in an R–1 area and seeks the towers' removal. Defendant's answer and response to Plaintiff's motion for summary judgment rely on Section 158.04(B)[1] of the 2004 ordinance, which states the following:

> All Wireless Telecommunications Facilities existing on or before the effective date of this Ordinance *shall be allowed to continue as they presently exist, as legally permitted non-conforming uses.* Such facilities shall be used, or repaired without having to comply with the Ordinance. Any material Modification of an existing Telecommunications Facility will require review in compliance with this Ordinance.

(Emphasis added.) Defendant argues that the emphasized phrase means that his towers became legally permitted non-conforming uses upon adoption of the 2004 ordinance.

The district court agreed with Defendant and denied Plaintiff's motion for summary judgment. Further, the district court ruled that given this interpretation of the ordinance and the absence of material issues of fact, all of Plaintiff's claims were disposed of and that the case was therefore dismissed.

## II. DISCUSSION

{5} On appeal, Plaintiff argues that the district court erred in its interpretation of the ordinance by (1) failing to give effect to legislative intent, (2) limiting the inquiry to the plain language of only one clause of the ordinance, (3) failing to construe the ordinance as a whole and giving all parts meaning and effect in light of legislative history and intent, (4) failing to give the term "nonconforming use" its generally accepted meaning, (5) construing the ordinance in a manner that produces an absurd result, (6) failing to give any deference to Plaintiff's interpretation of its own ordinance, and (7) allowing continuation of a public nuisance. Because these issues overlap significantly, we consider them together. Plaintiff also asserts that Defendant's towers violated Plaintiff's building and zoning ordinances at the time the towers were constructed, but Plaintiff acknowledges that the district court did not reach this question.

### A. Standard of Review

■ {6} The interpretation of an ordinance is a question of law, which the courts review de novo. *Alba v. Peoples Energy Res. Corp.,* 2004–NMCA–084, ¶ 14, 136 N.M. 79, 94 P.3d 822.

### B. Statutory Interpretation

■ {7} The principal objectives in the judicial construction of statutes are "to determine and give effect to the intent of the legislature." *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). Further, we review the entire statute and construe it as a whole so that all of the provisions will be considered in relation to one another. *N.M. Pharm. Ass'n v. State,*

1. This section was subsequently recodified unchanged as Section 158.10(B) but is identified

herein by the original number for consistency.

106 N.M. 73, 74, 738 P.2d 1318, 1319 (1987). We will not depart from the plain meaning of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the legislature could not have intended, or deal with an irreconcilable conflict among statutory provisions. *See State ex. rel. Helman v. Gallegos*, 117 N.M. 346, 351–52, 871 P.2d 1352, 1357–58 (1994). "In construing municipal ordinances . . . the same rules of construction are used as when construing statutes of the legislature[,] and [c]ertainly, where the question is simply one of construction, the courts may pass upon it as an issue solely of law." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998–NMSC–050, ¶ 4, 126 N.M. 413, 970 P.2d 599 (alterations in original) (internal quotation marks and citations omitted).

{8} In the absence of some contrary indication from the enacting body, courts first look to the plain language of an ordinance and give the words their ordinary meaning. *Lantz v. Santa Fe Extraterritorial Zoning Auth.*, 2004–NMCA–090, ¶ 7, 136 N.M. 74, 94 P.3d 817. The plain language analysis must be used cautiously. *Helman*, 117 N.M. at 353, 871 P.2d at 1359. If the language of an ordinance is clear, there is usually no need to employ judicial rules of construction. However, where the language of an ordinance is ambiguous, courts must look beyond the plain language. *Lantz*, 2004–NMCA–090, ¶ 7. "In the face of ambiguity in a code, we ordinarily defer to how the city council, as its author, interprets that code." *W. Bluff Neighborhood Ass'n v. City of Albuquerque*, 2002–NMCA–075, ¶ 41, 132 N.M. 433, 50 P.3d 182, *overruled on other grounds, Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003–NMSC–005, ¶ 16 & n. 10, 133 N.M. 97, 61 P.3d 806. When multiple sections of an ordinance come into play, we consider the relevant sections together "so that all parts are given effect." *High Ridge Hinkle Joint Venture*, 1998–NMSC–050, ¶ 5. "If the strict wording of the law suggests an absurd result, we may interpret the statute to avoid such a result." *Cummings v. X-Ray Assocs.*, 1996–NMSC–035, ¶ 45, 121 N.M. 821, 918 P.2d 1321. In the present case, we conclude that the ordinance at issue is ambiguous and that Defen-

dant's interpretation is both contrary to Plaintiff's intent and capable of producing absurd results.

### 1. Ambiguous Language and Intent of Municipality

{9} As noted above, this dispute centers on the meaning of the phrase in Section 158.04(B) of the 2004 ordinance stating that communications towers existing before enactment of the ordinance "shall be allowed to continue as they presently exist, as legally permitted non-conforming uses." In Defendant's view, this language confers upon the towers the status of legally permitted non-conforming uses, irrespective of whether the towers were in violation of building or zoning ordinances before enactment of the 2004 ordinance. In Plaintiff's view, the language means that only those existing towers that were legally permitted previously would continue with their status as non-conforming uses. The two interpretations appear to arise from uncertainty as to what the word "as" refers to in the phrase "as legally permitted non-conforming uses." Under Defendant's interpretation, "as" confers the status in which the facilities "shall be allowed to continue." Under Plaintiff's interpretation, "as" refers to the *status* in which the facilities "presently exist." Both interpretations have some merit—though if we approach them simply as a matter of parsing the language, we agree with the district court that Defendant's view comports somewhat better with the ordinary rules of English construction than Plaintiff's does. This observation, however, is not determinative.

{10} A second factor in construing the ordinance concerns the meaning of "nonconforming use." Under our case law, "[a] non[-]conforming use is a use that lawfully existed prior to the enactment of a zoning ordinance prohibiting such a use." *KOB–TV, L.L.C. v. City of Albuquerque*, 2005–NMCA–049, ¶ 12, 137 N.M. 388, 111 P.3d 708. The requirement of prior lawful existence muddies Defendant's preferred construction of the sentence at issue. By definition, the term "non[-]conforming use" includes the concept that the use was legal before the new

ordinance. *See* Rio Rancho, N.M., Code § 154.03 (2003) (defining "non[-]conforming use" as "[l]ots, structures, and uses which may have been lawful prior to adoption of the zoning code"). If the intent of Section 158.04(B) was in fact to bestow total amnesty on towers that were not previously legal, Plaintiff's using "non-conforming use," a term of art that specifically refers only to structures that were previously legal, would be an odd choice of words, especially in the absence of clarifying language, such as "shall be deemed."

{11} We conclude that the portion of Section 158.04(B) at issue is sufficiently ambiguous to have us "look beyond the plain language" and consider additional rules of construction. *Lantz*, 2004–NMCA–090, ¶ 7. We also conclude that under the analysis described in *Lantz*, we have "contrary indication from the enacting body" as to what the ordinance means. *Id.*

{12} As evidence of what the wireless communications facilities ordinance was intended to accomplish, we first observe that Plaintiff here, City of Rio Rancho, is the same entity that enacted the ordinance the previous year. While not conclusive, the position Plaintiff has chosen to advocate in this suit, filed in 2005, is at least persuasive evidence of what Plaintiff intended in enacting the ordinance in 2004.

{13} Plaintiff's motion for summary judgment was accompanied by the affidavit of Richard A. Comi, a consultant Plaintiff hired to assist with drafting the ordinance. In the affidavit, Comi states that the 2004 ordinance was based on a model ordinance that has been adopted by at least five hundred cities, with minor amendments. The affidavit also states the following:

> When we discussed [the model ordinance section permitting existing towers] with Rio Rancho, we expressed the fact that it was the intent of the Ordinance to allow towers that were [ ]legally permitted under previous[ ] rules or regulations to continue to exist and only come under the new Ordinance when they were modified. It was never the intent to allow towers that were not legally permitted to continue to exist[,] and to make this clear[,] we worked

with Rio Rancho to add the words "as legally permitted non-conforming uses."

Thus, Plaintiff asserted in district court that the language at issue was specifically added to the model ordinance with the intent of ensuring that only previously legal towers would be grandfathered.

## 2. Language of the Ordinance as a Whole

{14} We find further evidence of Plaintiff's intent by reading the ordinance as a whole. We note several sections that would not be consistent with grandfathering in previously illegal, potentially unsafe, and visually objectionable towers. The preamble of the ordinance states in part, "WHEREAS: The City of Rio Rancho finds that health, safety, public welfare, character and environment of the City and its inhabitants require that the City exercise such authority consistent with the Act." Section 158.01, titled Purpose and Legislative Intent, states in part:

> The intent of this Local Ordinance is to minimize [the] impact of Wireless Telecommunications Facilities, establish a balanced, fair and efficient process for review and approval of applications, assure an integrated, comprehensive review of environmental impacts of such facilities, and protect the health, safety and welfare of the City of Rio Rancho.

Similarly, Section 158.03, titled Overall Policy and Desired Goals for Telecommunications Permits for Wireless Telecommunications Facilities, states in part:

> In order to ensure that the placement, construction, and modification of Wireless Telecommunications Facilities protect the City's health, safety, public welfare, environmental features, the nature and character of the community and neighborhood and other aspects of the quality of life specifically listed elsewhere in this Ordinance, the City hereby adopts an overall policy with respect to a Telecommunications Permit for Wireless Telecommunications Facilities for the express purpose of achieving the following goals[.]

These repeated references to such goals as health, safety, welfare, and the character of the community would be inconsistent with grandfathering in existing unsafe or unsight-

ly towers that violate several other ordinances addressing these same goals with respect to structures in general.

{15} We also observe that the title of Section 158.04 is Exceptions From a Telecommunications Permit for Wireless Telecommunications Facilities. The content of Section 158.04 relates to the requirement of applying for and obtaining a permit for the siting of wireless telecommunications facilities. Defendant argues that Section 158.04(B) not only exempts him from having to comply with the permit requirements but also confers the status of "non-conforming uses" on his towers. We disagree.

{16} A grandfather clause narrows, qualifies or otherwise restrains the scope of an ordinance. *See Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998–NMSC–020, ¶¶ 23–24, 125 N.M. 401, 962 P.2d 1236 (stating that grandfather clauses, saving clauses, exemptions, and provisos are types of statutory provisions that "delineate a special exception from the general requirements of a statute"). Defendant would have us interpret Section 158.04 to restrain not only the scope of the Telecommunications Ordinance but also any other zoning ordinance governing his towers. Therefore, according to Defendant, Section 158.04 would act as a complete grandfather clause for Defendant's towers. Our Supreme Court has provided direction in how to interpret grandfather clauses:

> Generally, in resolving statutory ambiguities, courts will favor a general provision over an exception. This is especially true when a statute promotes the public welfare. Because of this judicial predilection, strict or narrow construction is usually applied to exceptions to the general operation of a law. For this reason, a grandfather clause will be construed to include no case not clearly within the purpose, letter, or express terms, of the clause. In interpreting the exceptions to the generality of the grant, courts include only those circumstances which are within the words and reason of the exception. When the scope of a grandfather clause is ambiguous, the court will construe it strictly

against the party who seeks to come within its exception.

*Rio Grande,* 2003–NMSC–005, ¶ 45 (emphasis, internal quotation marks, and citation omitted).

{17} As we explained in paragraph 11 of this opinion, Section 158.04(B) is ambiguous. Accordingly, we construe the clause strictly against the party who seeks to come within its exception. Section 158.04(B) contains three sentences. The second and third sentences provide additional clarification for the first sentence. Language in the second sentence allows those wireless facilities existing on or before the effective date of the ordinance to "be used, or repaired without having to comply" with the permit requirements of Chapter 158. Language in the third sentence, however, does require permit review in compliance with Chapter 158 when there is a material modification to an existing facility. Consequently, when we read all of Section 158.04(B), we conclude that the effect of the grandfather clause is limited to the permit requirements of Chapter 158 and that Section 158.04(B), read as a whole, does not exempt existing facilities from having to comply with Plaintiff's other zoning ordinances.

## 3. Construction to Avoid an Absurd Result

{18} We also rely on a further rule of construction: a statute will be construed to avoid an absurd result.

> When a peculiarity in the literal language of a statute leads to an absurd result, the court may construe the statute according to its purpose to avoid the absurdity. Where the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others.

*Stanley v. Raton Bd. of Educ.*, 117 N.M. 717, 719, 876 P.2d 232, 234 (1994) (alteration, internal quotation marks, and citations omitted). As noted, the district court in the present case did not reach the question of Defendant's alleged violations of other zoning

ordinances, so we cannot say whether an absurdity would actually result in the present factual setting. As a general matter, however, it would be absurd to conclude that a municipality would intend to leave itself without a remedy under existing ordinances for violations of, for example, a structurally unsound tower in danger of falling on nearby homes. We are also persuaded by Plaintiff's example of a hypothetical new ordinance disallowing construction of separate living quarters within single-family homes. If the new ordinance grandfathered in separate living quarters already built within existing homes, it would be absurd to conclude that the municipality intended to preclude enforcement of other ordinances, such as the existing electrical, fire, and plumbing codes, as to those units, regardless of the danger to occupants. We fear that if we were to read Section 158.04(B) as Defendant wishes, then we would be allowing wireless facilities existing on the date of the enactment of Chapter 158 to be immune from enforcement of other municipal ordinances that were not affected by the enactment of Chapter 158. This interpretation would cause an absurd result.

## III. CONCLUSION

{19} For the reasons set forth above, we hold that in enacting the 2004 ordinance, Plaintiff intended Section 158.04(B) to grandfather in only existing facilities that were lawful under preexisting ordinances and did not intend to immunize unlawful facilities. Accordingly, we reverse the district court's dismissal of Plaintiff's action, and we remand for further proceedings.

{20} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and RODERICK T. KENNEDY, Judges.