This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**BOARD OF COUNTY COMMISSIONERS**
**OF DOÑA ANA COUNTY,**

Plaintiff-Appellant,

v.                                                NO. 31,830

**GRANITE HANGAR DEVELOPMENT CO.**
**and GRANITE AVIATION SERVICES, INC.,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
Manuel I. Arrieta, District Judge

Thomas R. Figart
Office of the County Attorney
Las Cruces, NM

for Appellant

Martin, Lutz, Roggow & Eubanks PC
William L. Lutz
Las Cruces, NM

for Appellees

## MEMORANDUM OPINION

**ZAMORA, Judge.**

{1}     The Board of County Commissioners of Doña Ana County (Plaintiff) appeals from a district court order granting the County partial relief in a suit for breach of contract and forcible entry or unlawful detainer, but refusing to enforce certain terms of a lease based on equity. On appeal, the County challenges the district court's exercise of its equitable powers. Because we hold that the district court's exercise of its equitable powers was an abuse of discretion, we reverse and remand.

## I.     BACKGROUND

{2}     Plaintiff leased commercial space at the Santa Teresa Airport (the Airport) to Rosemar, Inc. In 1997, Rosemar Inc. assigned the lease to Granite Hangar Development Co. which in turn subleased the space to its affiliate, Granite Aviation Services, Inc. (collectively referred to as Defendants) to use for commercial operations including the sale of aviation fuel, the maintenance of aircraft, and the operation of both a flying club and a flight school. In the assignment of the lease, Defendants assumed and covenanted to perform all the conditions and terms of the original lease. The lease required, inter alia, payment of a fixed rent amount as well as additional rent equal to two percent of Defendants' gross receipts. Defendants paid the fixed rent and the gross receipts rent until 2002 when their bookkeeper passed away; after that, the additional gross receipts rent was not paid because the bookkeeper's replacement was unaware that it was required.

{3} An additional provision of Defendants' lease required compliance with the "Doña Ana County Minimum Standards for Commercial Aeronautical Activities at Santa Teresa Airport" (Minimum Standards). The Minimum Standards regulate commercial operations at the Airport.

{4} The original Minimum Standards were adopted as County Resolution 83-20, in 1983 and, in pertinent part, required that Defendants: (1) apply for and obtain approval from the County prior to subleasing the premises or engaging in commercial operations at the Airport; (2) provide two grades of aviation fuel each from 10,000 gallon storage tanks; and (3) use a building of at least 4,000 square feet as the principal building for their commercial operations. Though Defendants used a 10,000 gallon fuel storage tank as required, they only sold 100 low lead aviation gasoline and they failed to obtain the approvals required by the Minimum Standards to sublease the space or to begin commercial operations.

{5} In 2004, Plaintiff began leasing space at the Airport to one of Defendants' competitors, Blue Feather Aviation (Blue Feather). Blue Feather operated a flight school and sold aviation fuel. At some point, Blue Feather complained to Plaintiff about the low price at which Defendants were selling aviation fuel. Plaintiff subsequently amended the Minimum Standards to require commercial operators at the airport to provide fuel for both reciprocating engine and turbine (jet) aircraft from

12,000 gallon fuel tanks. Doña Ana County, NM, Ordinance 241-09 (Mar. 13, 2009). These amendments favored Blue Feather, whose operations were more recent and upgraded, and included the sale of jet fuel from a 12,000 gallon fuel storage tank. Blue Feather was the only commercial operator at the Santa Teresa Airport in compliance with the amended Minimum Standards.

{6} Around this time, Plaintiff began to enforce all commercial operators' lease provisions, including compliance with the Minimum Standards, and to collect the gross receipts rent even though, for several years, it had not been doing so. In January 2009, Defendants were notified that they were in violation of both their lease terms and the Minimum Standards. In April 2009, Plaintiff terminated the lease, citing Defendants' failure to come into compliance with the lease and the County procedures. Plaintiff demanded that Defendants vacate and surrender the premises.

{7} Plaintiff ultimately filed a complaint against Defendants in district court for breach of lease and for forcible entry or unlawful detainer. Defendants raised a claim of equitable estoppel; however, the district court granted Plaintiff's motion to strike the claim because it had not been pled as an affirmative defense. The motion was granted "subject to the [c]ourt's exercise of its equitable powers where appropriate."

{8} At the conclusion of trial the district court made the following pertinent findings of fact:

4

33. Defendant Granite Hangar was the first to bring 100 low lead gasoline to service the needs of other piston-driven aviation at the Santa Teresa Airport; it has never sold jet fuel which is now being provided by Blue Feather. The Minimum Standards require that a commercial operator provide both types of fuel. Defendants' operations do not involve jet engine aviation nor do their market or clients, have a need for jet fuel. (Gene Dawson, trial testimony).

34. Setting up a jet fuel facility would require a 30-year payback period for Defendants; it would not be economically feasible. (Gene Dawson, trial testimony).

35. That the Minimum Standards mandate space requirements which are in excess of 50 per cent of Defendants' current usage in addition to requiring another hangar for the Defendants' commercial operation. (Gene Dawson, trial testimony).

37. That the value of the improvements on the airport property of the Defendant Granite Hangar is approximately $379,000.00. Under the subject lease, the improvements could be forfeited through an unlawful detainer action. (Initial lease with Rosemar, Defendants' Exhibit 1, paragraph 4(I), page 13, and paragraph 21, page 30).

38. That the Defendant Granite Hangar will suffer additional damages in the future by reason of a termination of the lease by the County in the sum of $342,000.00.

39. That Defendant Granite Aviation will lose $190,000.00 in future income if it is required to shut down its commercial operations.

44. Historically, Plaintiff had a course of dealing with the Defendants and with most of the other operators at the airport of not collecting 2% of the gross revenue called for in their leases.

48. That at the time of writing the letters of default Plaintiff knew that it had a course of dealing of not enforcing the terms of the Minimum Standards and the terms of its leases with the operators.

5

56. That the actions of the Plaintiff in this case could provide Blue Feather with an exclusive right to sell fuel and conduct flight instruction on the airport.

57. While Defendants have been in breach of their underlying lease as well as out of compliance with the County's Minimum Standards, the actions and inactions of the County over the course of its dealings with Defendants, require this Court, under the circumstances presented, [to] exercise its equitable powers to fashion an appropriate remedy and provide the relief necessary to protect the rights of all interested parties and the public.

58. Equitable relief should be available under the facts of this particular case to avoid oppression, a real hardship[,] and unconscionable results to the Defendants and the general aviation public that depend upon Defendants' services; a forfeiture of Defendants' investment and services to the public would be unconscionable given the prior history and course of dealing between the parties.

{9} Based upon these findings, the district court entered the following conclusions of law:

2. That Defendants are in default of their lease and are not in compliance with the County's amended Minimum Standards.

4. That balancing the equities between the parties, it would be inequitable to grant the County its request for unlawful detainer and possession relief, or breach of contract.

5. That Defendants shall continue operations at the airport however, Defendants will have a period of thirty-six (36) months to bring their operations into compliance with the County's amended Minimum Standards and lease obligations, including obtaining the proper approvals.

6

6.    To the extent there are any arrearages in rental fees, gross receipts fees, or other lease-related fees, they shall be paid within thirty (30) days from the date of this Order.

7.    There is no legal or equitable basis to require a general (gasoline) aviation commercial operator to sell jet fuel when neither its market or clients require such fuel, or to require additional space requirements unless related to safety; Defendants are equitably exempt from those requirements of the amended Minimum Standards.

{10}    The district court's judgment incorporated by reference the findings of fact and conclusions of law. Plaintiff filed a motion to amend the court's findings and conclusions and to amend the judgment accordingly, which was denied. This appeal followed.

## II.    DISCUSSION

### A.    The District Court's Use of Its Equitable Powers Was An Abuse of Discretion

### 1.    Standard of Review

{11}    "The question of whether, on a particular set of facts, the district court is permitted to exercise its equitable powers is a question of law, while the issue of how the district court uses its equitable powers to provide an appropriate remedy is reviewed only for abuse of discretion." *United Props. Ltd. v. Walgreen Props., Inc.*, 2003-NMCA-140, ¶ 7, 134 N.M. 725, 82 P.3d 535. It is undisputed that the district court exercised its equitable powers in this case. Accordingly we review the district

court's judgment for an abuse of discretion. An abuse of discretion occurs when the ruling is clearly untenable, not justified by reason, or against the logic and effect of the facts and circumstances of the case. *Kinder Morgan CO2 Co. v. State Taxation & Revenue Dep't*, 2009-NMCA-019, ¶ 9, 145 N.M. 579, 203 P.3d 110.

{12} To the extent this appeal requires us to interpret the Minimum Standards, our review is de novo. *See United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 7, 148 N.M. 426, 237 P.3d 728 ("The meaning of language used in a statute is a question of law that we review de novo." (internal quotation marks and citation omitted)). "The principal objective in the judicial construction of statutes is to determine and give effect to the intent of the [L]egislature." *Baker v. Hedstrom*, 2012-NMCA-073, ¶ 10, 284 P.3d 400, *cert. granted,* 2012-NMCERT-007, 295 P.3d 600 and *aff'd on other grounds,* 2013-NMSC-043, 309 P.3d 1047 (alteration in original) (internal quotation marks and citation omitted). "In construing . . . ordinances . . . the same rules of construction are used as when construing statutes of the [L]egislature[,] and [c]ertainly, where the question is simply one of construction, the courts may pass upon it as an issue solely of law." *City of Rio Rancho v. Logan*, 2008-NMCA-011, ¶ 7, 143 N.M. 281, 175 P.3d 949 (omission in original) (internal quotation marks and citations omitted).

## 2. Equitable Exemption From the Lease Provisions

**{13}** Defendant argues that the district court was within its discretion when it equitably exempted Defendants from full compliance with the Minimum Standards, which was required by Defendants' lease. We disagree.

**{14}** Equity is defined as "[t]he body of principles constituting what is fair and right[.]" Black's Law Dictionary 619 (9th ed. 2009). It can also mean a court's "recourse to principles of justice to correct or supplement the law as applied to particular circumstances." *Id.* District courts enjoy inherent equity jurisdiction. *See Sims v. Sims*, 1996-NMSC-078, ¶ 27, 122 N.M. 618, 930 P.2d 153 ("New Mexico courts do not distinguish between actions brought at law or suits brought in equity. Our district court rules expressly govern . . . all suits of a civil nature whether cognizable as cases at law or in equity." (omission in original) (internal quotation marks and citations omitted)).

**{15}** In applying equitable principles to contract disputes, courts should do so "in a way which best limits judicial interference" with the contract. *Davis & Assocs., Inc. v. Midcon, Inc.*, 1999-NMCA-047, ¶ 16, 127 N.M. 134, 978 P.2d 341 (internal quotation marks and citation omitted); *see also United Props. Ltd.*, 2003-NMCA-140, ¶ 19 ("Equity jurisdiction has never given the judiciary a roving commission to do whatever it wishes in the name of fairness or public welfare." (internal quotation

9

marks and citation omitted)). New Mexico law favors enforcing contracts as they are written. *United Props. Ltd.*, 2003-NMCA-140, ¶ 12. By limiting the application of equitable doctrines to contract disputes and business dealings, we recognize a "broad public interest in protecting the right of private parties to be secure in the knowledge that their contracts will be enforced[.]" *Id.* ¶ 10. "Parties to a contract agree to be bound by its provisions and must accept the burdens of the contract along with the benefits. When a contract was freely entered into . . . the duty of the courts is ordinarily to enforce the terms of the contract which the parties made for themselves." *Id.* "A court should . . . not interfere with the bargain reached by the parties unless the court concludes that the policy favoring freedom of contract ought to give way to one of the well-defined equitable exceptions, such as unconscionability, mistake, fraud, or illegality." *Id.* In short, "[i]n the absence of fraud, unconscionability, or other grossly inequitable conduct, New Mexico courts do not have discretion either to relieve parties to a commercial lease of their contractual obligations or to interfere with contractual rights and remedies[.]" *Id.* ¶ 28 (interal quotation marks and citation omitted).

{16}    In this case, the lease expressly required adherence to the Minimum Standards. In the assignment of the lease to Defendants, Defendants assumed and covenanted to perform all of the conditions and terms of the original lease. Defendants do not argue,

nor did the district court find the existence of unconscionability, mistake, fraud, illegality or other grossly inequitable conduct that would relieve Defendants of their contractual obligations under the lease. As such, the district court abused its discretion in exempting Defendants from full compliance with the lease requirements.

{17}    We are unpersuaded by Defendants' argument that the district court found unconscionability which justified its refusal to enforce all portions of the lease.

{18}    Unconscionability, as an equitable defense, is "rooted in public policy" and "allows courts to render unenforceable . . . agreement[s] that [are] unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 21, 146 N.M. 256, 208 P.3d 901. Unconscionability concerns the "legality and fairness of the contract terms themselves[,]" as well as, "the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." *Id.* ¶¶ 22-23. "In determining reasonableness or fairness, the primary concern must be with the terms of the contract considered in light of the circumstances existing when the contract was made." *Guthmann v. La Vida Llena*, 1985-NMSC-106, ¶ 23, 103 N.M. 506, 709 P.2d 675. While a contract may be void due to unconscionable or oppressive terms, "the fact that some of the terms of the

11

agreement resulted in a hard bargain or subjected a party to exposure of substantial risk, does not render a contract unconscionable[.]" *United Props. Ltd.*, 2003-NMCA-140, ¶ 10 (internal quotation marks and citation omitted).

{19}   In the present case, Defendants have misconstrued the district court's findings, which state in relevant part:

> Equitable relief should be available under the facts of this particular case to avoid oppression, a real hardship[,] and *unconscionable results* to the Defendants and the general aviation public that depend upon Defendants' services; a forfeiture of Defendants' investment and services to the public would be *unconscionable* given the prior history and course of dealing between the parties.

(emphasis added). In using the term "unconscionable" here, the district court focused on the potential effects of enforcing the lease, not on the express lease terms or the circumstances surrounding the formation of the contract. This does not amount to a finding of unconscionability that would allow the district court to render portions of the lease unenforceable.

{20}   We recognize that Plaintiff did not require the Airport's commercial operators to strictly comply with their leases for a number of years, that Defendants have made substantial investments over the course of their lease, and that enforcement of the lease now exposes Defendants to significant risk. Notwithstanding our empathy for Defendants, the fact remains that they have not complied with the terms of their lease. Nor have Defendants shown any of the well-defined equitable exceptions to contract

12

enforcement such as unconscionability, mistake, fraud, or illegality. Therefore, we conclude that the district court abused its discretion in equitably exempting Defendants from full compliance with the lease terms.

**3.      Equitable Exemption From the Minimum Standards Ordinance**

{21}      Because we have held that the district court abused its discretion in exempting Defendants from complying with the lease, and because the lease required Defendants to comply with the Minimum Standards, we need not address Plaintiff's argument that the district court further abused its discretion in equitably exempting Defendants from complying with the Minimum Standards.  However, the district court's finding of fact and conclusions of law are rather ambiguous on the issue. We therefore elect to clarify that, to the extent the district court intended to sever the Minimum Standards from the lease and declare them equitably inapplicable to Defendants, the district court abused its discretion.

{22}      As a preliminary matter, we must determine whether the Minimum Standards are mandatory, since a court's ability to use its equitable powers to circumvent a statute or ordinance depends on whether or not the specific provision of law is mandatory. *See Waters-Haskins v. N.M. Human Servs. Dep't,* 2009-NMSC-031, ¶ 17, 146 N.M. 391, 210 P.3d 817 (stating that equitable estoppel can only "bar those rights

13

or actions over which an agency has discretionary authority"). Here, the pertinent Minimum Standards provide:

> The [fixed base operator] *must* offer fuel for both reciprocal and turbine (100LL/AvGas and Jet A). . . . The principal buildings used by the [fixed base operator] *shall* be of sufficient size to adequately meet the requirements of the services being offered; however, a minimum of 4,000 square feet *must* be allocated and utilized for crew/passenger lounge facilities, public restrooms, sales/rental administration, aircraft charter and flight instruction and training activities.

Doña Ana County, NM, Ordinance 241-09 (Mar. 13, 2009) (emphasis added). This language in the ordinance creates a clear mandate. *See State v. Lara*, 2000-NMCA-073, ¶ 7, 129 N.M. 391, 9 P.3d 74 ("The words 'shall' and 'must' generally indicate that the provisions of a [law] are mandatory and not discretionary." (internal quotation marks and citation omitted)).

{23} It is well established that equitable remedies are inapplicable when statutory mandates are clear, and where the result would be contrary to the express statutory provisions. *See Coppler & Mannick, P.C. v. Wakeland*, 2005-NMSC-022, ¶ 8, 138 N.M. 108, 117 P.3d 914 ("It is a basic maxim that equity is ancillary, not antagonistic, to the law. Equitable relief is not available when the grant thereof would violate the express provision of a statute. . . . [E]quity follows the law as declared by a statute." (internal quotation marks and citation omitted)); *see also State of N.M. ex rel. Madrid v. UU Bar Ranch Ltd. P'ship*, 2005-NMCA-079, ¶ 30, 137 N.M. 719, 114 P.3d 399

(stating that "courts have refused to allow [equitable] estoppel . . . when the use of estoppel . . . contradicts a statute or would permit an act that is contrary to law"). It necessarily follows that equitable remedies are inapplicable when the mandates of ordinances are clear and where the result would be contrary to the provisions of the ordinance. *See* NMSA 1978, § 4-37-1 (1975) (granting counties the power to adopt ordinances); *see also City of Albuquerque v. Ryon*, 1987-NMSC-121, ¶ 6, 106 N.M. 600, 747 P.2d 246 (recognizing ordinances as "[l]egislatively authorized rules and regulations [having] the force of law").

**{24}** "[Equitable remedies are] rarely applied against the state or its governmental entities, and only in exceptional circumstances where there is a shocking degree of aggravated and overreaching conduct or where right and justice demand it." *Envtl. Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 22, 131 N.M. 450, 38 P.3d 891. And even where such circumstances exist, the party raising estoppel must show the result of estoppel would not be contrary to statutory requirements and must establish the six essential elements of estoppel. *Waters-Haskins*, 2009-NMSC-031 ¶¶ 16-17, 22-23 (estopping the state only after first determining whether the state was acting in its discretionary authority, the basic elements of estoppel were met, and right and justice demanded it).

15

**{25}** Courts may not exercise equitable powers to circumvent the law simply because enforcing the law may bring about unfair results. *See Coppler*, 2005-NMSC-022, ¶ 8 ("Equity is not an all-purpose judicial tool by which the 'right thing to do' can be fashioned into a legal obligation possessing the legitimacy of legislative enactment." (internal quotation marks and citation omitted)); *see also Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 26, 115 N.M. 690, 858 P.2d 66 (stating that "discretion [to apply equitable doctrines] is not a mental discretion to be exercised as one pleases, but is a legal discretion to be exercised in conformity with the law").

**{26}** In this case, the Minimum Standards are mandatory and carry the weight of law. The Minimum Standards govern commercial operations at the Airport, and as commercial operators, Defendants must comply with them. Defendants have not demonstrated, nor did the district court find the existence of any exceptional circumstance showing a shocking degree of aggravated and overreaching conduct. The district court's exemption in this case is not in conformity with the law. It directly circumvents the ordinance and cannot be justified by the court's desire to avoid potentially unfair results for Defendants. Accordingly, we conclude that the district court abused its discretion in using its equitable powers to exempt Defendants from full compliance with the Minimum Standards.

**B.      Hypothetical or Theoretical Arguments Need Not Be Addressed on Appeal**

16

{27}     Finally, Defendants argue that enforcement of the Minimum Standards as they are written could result in Blue Feather having an exclusive right to sell aviation fuel and conduct flight instruction at the airport. This, Defendants contend, would violate NMSA 1978 § 4-38-31 (1949) which prohibits a grant by the County of exclusive use of the airport to any "person, persons, firm, corporation[,] or association," and would violate equal protection. There is nothing in the record suggesting that upon enforcement of the Minimum Standards, Blue Feather will be granted the exclusive right to sell aviation fuel and conduct flight instruction at the Airport. Defendants' argument is merely a hypothetical supposition of what might occur at some point in the future. Therefore, we need not address this contention. *See State ex rel. Stratton v. Roswell Indep. Schs.*, 1991-NMCA-013, ¶ 44, 111 N.M. 495, 806 P.2d 1085 (requiring the question posed to the appellate court to be real and not theoretical).

**CONCLUSION**

{28}     For the reasons set forth above we reverse the district court's judgment exempting Defendants from full compliance with the lease and the Minimum Standards incorporated therein, and we remand for proceedings consistent with this opinion.

{29}     **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**CYNTHIA A. FRY, Judge**